Good afternoon, Your Honors. I'm the first one that gets to say good afternoon. That's not a good thing. My name is David Braverman, together with me at Council Table is Mr. Julie, and it is our privilege to represent Eric Kolar in this appeal. In a relatively terse 13-page opinion, the District Court dismissed with prejudice and without leave to amend Plaintiff's Complaint pursuant to Rule 12b-6. This is a complicated RICO matter. The District Court, we respectfully suggest, erroneously dismissed the case. We seek reversal today and remand the District Court either with instructions that the defendant shall answer within a reasonable period of time determined by the court, or that Plaintiff should be permitted the opportunity to amend their complaint to conform. Claim by claim, first at the subsection A. Help me understand what the RICO injury is here. Sure, sure. The investment injury, Your Honor, in this case, is not just the subversion of the money from Mr. Kolar. We have alleged, as the Court is well aware, a fraudulent scheme whereby Mr. Kolar was induced through fraudulent misrepresentations, embezzlement, breaches of fiduciary duty to make capital contributions when he was not obligated to do so, and when he was not told about it, and when he was lied to about what was going on. But I would like to focus the Court's attention on a particular transaction, the Island View Wheeler Way transaction. Island View was a partnership that owned a property of which Mr. Kolar was a partner. He was told, Mr. Kolar was told, that in order to lease the property to the Lenox Corporation, Island View needed to make a capital contribution or an incentive payment to Lenox of $4.5 million. That was not true. What he was not told was that in order for Lenox to lease the property, Island View had to purchase the Wheeler Way property, which was the premises in which Lenox was then situated. So what happened was that the RICO Enterprise, in this case, constructed a circumstance. Where's the Enterprise? The Enterprise is, Your Honor, seven limited partnerships, a corporation. Well, and you said in this case, it's the Island View as to that transaction. Yes, sir. What's the Enterprise you're relying upon for that being a RICO injury? Well, I think the Enterprise is the Enterprise for purposes of the complaint, all the transactions, Your Honor. Okay. But the participants in that particular transaction were the Island View partnership, the PREI entity, Mr. O'Neill, and then a non-party defendant, a Wheeler Way partnership that we were not told about. And what happened was that Island View contributed, and Mr. Kolar was led to contribute through borrowings and cash, $4.5 million to the Lenox Corporation. Simultaneously with the transaction, and concealed from Mr. Kolar, Lenox Corporation sold its Wheeler Way property to a new entity formed by the defendants. And they sold the property not for the $10 million that they had listed it for, not for the $10 million that they required, but instead for $5.5 million, $4.5 million discounted from what they were seeking. That $4.5 million discount was supplied by Island View in its incentive compensation to Lenox Corporation. So Lenox ended up getting its $10 million for its property, $4.5 million through Island View, and $5.5 million through this new Wheeler Way partnership that acquired the property. What they also didn't tell Mr. Kolar was that in their back pocket they had a deal to sell the property. So that they were buying the property at a discount, a discount funded by Mr. Kolar and his parties, and they have now an opportunity to sell the property, and they did within weeks of the transaction for a $2.5 million profit. So the RICO injury here, getting back to your Honor's question, the investment injury, is not only the fact that he was duped into lending and contributing his portion of the $4.5 million, but he didn't get the opportunity to acquire at a discount the Wheeler Way property. So there was a usurpation of corporate opportunity. Couldn't you make that with regard to any scheme that results in an economic loss? Couldn't you always argue that those lost dollars could have been invested someplace else, and therefore there is another removed use and therefore RICO injury? Why isn't that just a natural consequence of the scheme, what you're arguing? Because, Your Honor, it's a very good question, and the reason is because this was part and parcel of one transaction. It was all tied together. It's not that he was deprived of the investment opportunity, but it was concealed from him because there was an in fact existing investment opportunity to acquire Wheeler Way at a $4.5 million discount that he funded through the Island View lease transaction. Furthermore, what they didn't tell him, and here's where the real injury comes in, Your Honor, is that they then flipped the property that he funded for a $2.5 million profit. He was deprived of his portion of the $2.5 million profit. He was deprived of his corporate opportunity to acquire this property. He was not told about it, yet he was the funder of the deal. This was a complicated scheme that was designed to dupe Mr. Kohler and to enrich the defendants not only by the $4.5 million that he lost, but by the opportunity to acquire the $4.5 million discount, the same $4.5 million, this property, and also to sell the property at a profit when the agreement of sale, we believe, was already consummated and ready to go. But isn't that injury caused by the racketeering acts as opposed to, I mean, we're dealing with Section A now. The investment of the proceeds has to cause the injury. How is your adversary's argument in that respect wrong? Because I don't get to recover my share of the profits, Your Honor, and I'm using it colloquially. Yes. I don't get to recover Mr. Kohler's share of the profits on the sale of Wheeler Way. I lost $4.5 million. That's the racketeering injury in Your Honor's parlance. Yes. But the loss of the corporate opportunity that goes along with Wheeler Way, the loss of the opportunity to sell the property for another $2.5 million gain, that's the investment injury here. That's always, whenever you have a sense, and I'll use the term, I'm trying not to make it pejorative, but whenever you have a situation where there's a fraudulent scheme that injures someone, and that was my point earlier, the money that the person, the victim of that scheme loses, he or she then thereby does not have the opportunity to take that money and use it someplace else. You can always ratchet up or morph a RICO injury out of that kind of a scheme if that's all a RICO injury requires. What's the difference?  We're not saying that if Mr. Kohler had his share of the $4.5 million, he could have gone out and done something with it and made money. What we're saying is he lost his share of the $4.5 million. Yes, he could have, Your Honor, gone out and done something with that money. But in addition, and more importantly for purposes of 1962A, is he didn't get to participate in his partnership's transaction involving Wheeler Way. It's the same transaction. Well, it is the same transaction. It seems to me it's the same injury, too. I don't see a distinction in that injury. There's another $2.5 million that he's losing. Well, that's the dollar amount on that injury, but why isn't it an injury that naturally flows from the first injury? The natural consequence of his loss of the first injury is his share of the $4.5 million. Right. The investment injury here is that his corporation, Island View, or his partnership, Island View, lost the corporate opportunity to participate in the Wheeler Way transaction, which was an integral part of the original lease transaction. Lennox was not going to lease the property unless and until it sold its Wheeler Way property. Mr. Kohler was not told that. When the defendants got together and acquired the Wheeler Way property at the discount funded by Mr. Kohler, that's the racketeering loss. I'm sorry, that's the racketeering loss. But the investment injury is the inability to profit on the sale of Wheeler Way, which was his corporate opportunity. In the first instance, the injury is capped at the $4.5 million. In the second component of it, his loss is not capped. It's whatever profit could have been reaped on the property that was acquired with his money. It's not like he had the opportunity to go out and invest in something else. His partnership did do this. His partnership did acquire the property and was able to sell it at a profit. He was deprived of that profit. He was also deprived of the money that they took from him. So there's the distinction between the racketeering loss and the investment injury. And I hope that's clear, Ron. I want to understand your argument. I'm not sure that the distinction is as clear as maybe it should be to me. But go ahead. Maybe it's the hour. But it seems to me it's the kind of—if I'm swindled out of— if I have $1,000 that I'm going to invest in the stock market and I'm swindled out of it and I could establish that I was going to place it on Qualcomm right before Qualcomm went through the ceiling, I could argue I lost the opportunity to buy Qualcomm. That's one. And I also lost the horrendous, obscene profits I would have made when Qualcomm went through the roof. That's two. And therefore, that's my RICO injury. I was deprived of the opportunity to use my money to leverage another profit. It sounds like that's the kind of argument you're making, except the leveraging vehicle becomes the partnership's interest that he was basically defrauded out of realizing. The distinction, Your Honor, and I think the Lugash case addresses this. The distinction is that when you're dealing with a corporate opportunity, this opportunity to acquire Wheeler Way belonged to Island View. It was taken from Island View by the defendants and given to a new entity about which Mr. Culler knew nothing about, and it then took the property that he bought and flipped it at a profit without any disclosure. I think the problem, Your Honor, is not the facts of the case. I think the problem is the amorphous definition of investment injury. Well, you may well be right about that. You may well be right about that. With all due respect, it's really tough to understand. We think we've hit it. We think that we've got it, and we think that we clearly allege a 1962A claim. Well, I'm not sure Lugash helps you. First of all, it's a district court case. Yes, it is. And I'm just not sure how compelling it is. But you may be right. You may be absolutely right. And my clerks always give me the dickens for this. In the context for which RICO was intended, it's money laundering, and it's very, very clear. When you get away from that, it does become very amorphous. But this is, Your Honor, a very close case in a commercial context to money laundering. You could argue that. They're taking Mr. Culler's money, and they're filtering it through one partnership, a lessee, into the acquisition of a property from the same lessee. But they're not washing it. They're just diverting it. They're diverting it and increasing it and depriving him of both his initial investment and the profits to which he was entitled. And I guess that's really the key. It's they're depriving him of the profits to which he was entitled. And that's my point. Whenever you lose money that you would have invested, that's the nature of a loss. Except that this transaction involved property that they didn't tell him about. The incentive payment that was made, that was not the sine qua non of the deal. The sale of the Wheeler Way property was the sine qua non of the deal. They didn't tell him that. They didn't tell him that they were going to use his money to accomplish the sine qua non. And then once they did accomplish it and take that property, they were going to profit from it. He lost both in the loss, and he lost in the loss of the corporate opportunity, the profit. And, Your Honor, if that doesn't cut it, I've said it as clearly as I can. I think our brief lays it out, and we understand. With respect to 1962C, and I respectfully reserve the floor. Go ahead. With respect to subsection C, Your Honor, I think the district court missed the boat. With all due respect. Let me ask, should we, this is, the district court decided this before Boyle. And the court's discussion in Boyle, arguably, goes directly to what the court was concerned at under your subsection C, maybe D, but clearly C. Should we remand to have the court apply Boyle to the subsection C claim? Well, I think that there could be no harm in doing that, Your Honor, but I think the court can go further and to give further direction to the district court and remand because the district court's decision, frankly, under C, was just, we believe, wrong. We believe that we've established the enterprise person distinction. Each of the defendants was a RICO person. The enterprise was completely different from each of the individual defendants. And it's really, it's no different from the Philadelphia Phillies. You know, Ryan Howard and Chase Utley and all the other teammates, each of them are Philadelphia Phillies, but none of them are the enterprise. The Philadelphia Philly team is the enterprise. Mr. Reverend, you're making a very long day a heck of a lot longer by bringing the Phillies into this. In any event, and I think we've established through the embezzlement scheme, the scheme to defraud, the breach of fiduciary duties, we've established the pattern of racketeering activity. We've established in our briefs, we think, and the record below is clear, that there was continuity, that the pattern extended both on an open-ended and closed-ended basis beyond a two-year period of time. It was capable of repetition, and frankly, we believe it's continuing today. So I've reserved a few moments, unless the Court has any additional questions. I do. Just since you're on our time, could you give us an update on the state court proceedings? Absolutely. The defendants filed preliminary objections in the CP Court, the equivalent, obviously, to a motion to dismiss. That has been argued, has been briefed, it has been argued, it has not yet been decided. The parties have engaged in paper discovery, but we have not yet commenced any deposition discovery. Well, the parties will let us know if they end up settling the case, right? We would certainly do that, Your Honor, and we have been trying, but we will do that. Thank you. How much time did you reserve for rebuttal? Three minutes, if I may. Okay. It may not be enough, but let's certainly get those three. Thank you, Your Honor. My name is Matthew Taylor. On behalf of the defendants' appellee, I'm here at the table with Rob Columbus. Certainly, this is a classic case of a plaintiff trying to convert a simple contract dispute into a right-of-hearing claim. Well, it's getting pretty easy to do that, though. It's getting fairly easy to take a garden variety fraud, if you get enough of them, and morph it into a RICO. I respectfully don't think it's easy, sir. We certainly have to plead the proper elements to the predicate acts, which the plaintiff here has failed to do. You need to plead a 1962A injury, an investment injury, which the plaintiff has failed to do, and you need to plead properly a 1962C claim, which the plaintiff has failed to do. How has he failed to plead the 1962C? In the 1962C, the plaintiff needs to show that there is a distinction, that there is a distinctiveness between the RICO enterprise and the RICO defendants. Let me just find my notes here. I'm sorry, Your Honor. You know, that's complicated in a situation like this where you've got parties comprising the RICO enterprise that in and of themselves have a separate legal identity. It seems to me if you're right, we have to ignore the legal fiction that a partnership is separate from the parties that comprise it, that a corporation is separate from the parties that comprise it. Why couldn't you have an individual, say, for example, O'Neill, conducting the affairs of a group of partnerships, each of which has its own separate legal identity, it's a legal person, but they could come together in such a way or be run in such a way that each of them together could be looked at as a RICO enterprise or each one individually, given the manipulation that is alleged, could be a RICO enterprise, both the victim as well as a participant in the RICO conspiracy. Why couldn't you have that? And if you could have that, why isn't that here? Well, what we have here is we have a plaintiff who pled what the RICO enterprise was, and the RICO enterprise was PREI, the various affiliated companies, and O'Neill. He's also pled that the RICO defendants are the exact same parties. And so, therefore, it lacks the distinctiveness, and that's what's instructive by the gasoline sales case decision by the Third Circuit. A corporation must always act through agents and related entities. An association fact enterprise consisting solely of the corporation's agents and related entities is likely to be no more than the individuals or entities that carry the corporate defendant's actions out. Okay. Now, is that before or after Jaguar cars? Well, it's always been the case in terms of the analysis of when it's an association in fact enterprise, as is what's alleged in this case. So the plaintiff takes some comfort in Kushner, for example. That's of no – it's unremarkable in this case. That's a situation where there was a single defendant individual and a single RICO or a single enterprise. What we have here is we have an association in fact enterprise as alleged very in detail by the plaintiff. At paragraph 17 of the complaint, it talks about the PRI's business generally involves the acquisitions of real property by single purpose entities, limited partnerships. That PRI's revenues were derived from the development of the real estate owned by those affiliates. That PRI's chairman, Michael O'Neill, allegedly controlled the affairs of all the defendants. PRI's principals initially funded all the defendants. So in short, the complaint alleges a corporate structure whereby PRI acts through O'Neill and the affiliated companies, and that's gasoline sales. We do not have distinctiveness at all here. But your adversary points out that you're trying to shoehorn this into sort of a corporate structure where there's a parent and subsidiaries. It's not that, is it? I mean, we've got disparate – well, I mean, we've got a group of partnerships, all distinct. You know, how do you respond? I think when you have to look at this, Your Honor, is how they have set out the RICO enterprise here. And when you look at the RICO enterprise and compare that to the RICO defendants, there is no distinctiveness as the courts look at it. This is not a piercing or corporate bail analysis, Your Honor. This is a look at how and if there is a distinction, distinctiveness, between the enterprise on the one hand and the RICO defendants on the other hand. And it's just not there by their own pleadings. These are affiliated companies that are operating in unison in terms of how they have set out the association-backed enterprise. There is no distinctiveness, and the plaintiff has not pointed out anywhere where it is. And the lower courts certainly found that there was no distinctiveness and in part ruled that that's why the 1962C claim must fail. Forget about the more fundamental that there's no adequately pled predicate facts. There is just no distinctiveness, Your Honor. Are you going to deal with the substantive pleading of Section C or? If you would like me to. In terms of it is not, there is no fraud or deception pled for purposes to support a 1962C claim. Your Honor, you're saying there's no scheme to defraud. There's no scheme to defraud, and that was easily recognized by the lower court. This is, and of course in order to maintain a violation of RICO statute, a plaintiff must plead that the defendants committed at least two predicate acts of racketeering. A contract dispute between partners, even a breach of fiduciary duty, even a conversion of funds belonging to another simply does not cut it. RICO doesn't reach these ordinary business disputes. The only predicate acts plaintiff argues that he pled are mail-on-wire fraud. Plaintiffs failed to plead mail-on-wire fraud as a predicate act because plaintiffs failed to plead the existence of any scheme to defraud. Well, how did he fail? It seems to me his entire theory of this case and of the complaint is this gigantic, very intricate scheme to defraud Kolar out of portions of monies that he's entitled to and also I guess to require him to make capital calls that he shouldn't have to make. And why isn't that adequate? Well, it's not adequate because there's Forget the enterprise for a second, just for the pleading the fraud. I understand. Just based on the fact that there is no, and it was correctly pointed out by the lower court, there is no specificity to the scheme. There is no who, what, where, when. And in fact, when there is even any attempt to point to a fraud, it is in allegations where they say that preferred falsely took the position or under a purported claim of right took the position that we're going to take this money and apply this money here. There is no fraud. And that's clearly evident just by a close look at the allegations in the complaint. So this is one of those spots where you say this is a plain old contract case. It's not a fraud. It's just a bunch of contract claims. This is a plain contract case on complicated business structures and real estate transactions where former partners have a disagreement as to what their obligations are. That's what comes out in this complaint. A reading of this complaint, there just is no specificity. There are some very general allegations. Well, should he be allowed, well, two things. One, should he be allowed to amend? And two, we're at the 12B6 stage. It may well be that given adequate discovery, now maybe you'd win on summary judgment, but why shouldn't he at least have the opportunity to take discovery to find out whether or not any flesh can be put on the bones? Your Honor, he was given every opportunity to have either when it was as a matter of right or when it was time for an application for leave of court to file an amended complaint. He chose not to. He stood pat on these allegations. There's over 150 paragraphs in this complaint. And he should not be given that opportunity now because he didn't take that opportunity below. The best he did was drop a footnote and raise it in passing in oral argument in front of Judge Tucker and said, boy, if I had some discovery, maybe I could discover more. That's not the standard here. The standard here is was there an abuse of discretion by the lower court? There was no discretion to abuse. He never sought leave of court to amend his complaint. So I respectfully suggest, Your Honor, that that time has come long ago and passed. Thank you. Thank you. Thank you. I think, Your Honor, Judge McKee, you hit the nail on the head when you said that our whole complaint talks about this elaborate scheme for fraud. Just the Island View-Wheeler Way transaction, which I described to the court, is, I think, more than sufficient to establish the underpinnings of the fraudulent transaction, the fraudulent transactions. And, indeed, Mr. Kohler was repeatedly advised, we're going to, if you consent to this transaction, we will fund or we will pay to you $1.6 million, $1.2 million, $2 million. And in repeated occasions, all of which are alleged, time, place, date, manner, email, wire, all of the detail of the transaction is alleged in the complaint in these 150 paragraphs. Each and every time he was defrauded into believing he was going to be getting X, he agreed to the transaction. And not only did he not get X, he didn't even get Y. He got nothing. So that's part and parcel of the scheme to defraud. Your Honor is correct that gasoline sales, if not overruled, has been substantially eroded by Jaguar cars. And O'Neill, this cannot be a routine contract dispute. Mr. O'Neill is not a party to a single contract in the whole case. So that there would be no way to say that, as to Mr. O'Neill, there is a contract dispute. In each and every one of the contract counts, no less than six, and in some cases seven, of the remaining defendants are not parties to it. It's only when you get into the RICO allegations where you get the enterprise, which is substantially distinct from the individual members, because the individual members have a legitimate business to conduct. They operate their real estate businesses. But once they became the enterprise, they engaged in a pattern of illegal activity accomplished through a series of predicate acts designed to execute. Given that postulation, though, there is no distinctiveness. Are you saying there doesn't have to be distinctiveness anymore? Because the way you've just described it, there's no distinctiveness. No, I think there is distinctiveness, Your Honor. I think the enterprise is distinct from the individual constituent members. The individual constituent members have their own legitimate businesses. But those legitimate businesses do not include the racketeering enterprise of defrauding Mr. Kohler and other investors in those projects. And that's the distinction we're making, that the enterprise itself is dramatically distinct from the constituent members. And we do believe, Your Honor, that leave to amend should have been granted. We did request it of the court. When the court decided the motion to dismiss, she immediately marked the case closed so that there was no opportunity at that time to file a motion for leave to amend. We asked it in our brief. We asked it at oral argument. And it wouldn't be a bad thing for the court to remand it for Boyle determination. Because I think Boyle does impact the enterprise issue under 1962C. And I also think that it is significant because it talks about the fact that the RICO statute is to be broadly read, particularly at the pleading stage, so that maybe on summary judgment they do win. But at this stage, we think it's inappropriate to throw us out. Okay. We would still have to resolve your Subsection A claim, though, because Boyle does not address that. You're absolutely correct, Your Honor. And I think that we have adequately pled an investment injury, which I think is the critical issue under the 1962A claim. And I invite the court to analyze the Wheeler Way Island transaction. I can't tell you. I can't tell you. I can't tell you how much time has passed. And forget the Philly. I can show you my diagram on Wheeler Way. I've got diagrams of the diagram. It's got to be a simple way to conduct your business. I'll tell you. No, it's not, Your Honor. And it's not a simple any kind of case, certainly not a simple contract case. Well, thank you. I think both sides have raised a skillful and helpful argument. And we'll take no further advice. Thanks. All rise. This court is adjourned until Thursday, October 9, 2018.